**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRIAN TERRELL, KENYANA WILLIAMS, and JOHN MARBEE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BURLINGTON COAT FACTORY WAREHOUSE CORPORATION,<br><br>Defendant. | Case No. ____________________<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**<br><br>**CLASS ACTION PURSUANT TO FED. R. CIV. P. 23** |

**COLLECTIVE/CLASS ACTION COMPLAINT**

Plaintiffs—Brian Terrell ("Terrell"), Kenyana Williams ("Williams"), and John Marbee ("Marbee") (collectively, "Plaintiffs")—bring this action individually and on behalf of all current and former hourly retail store employees (collectively, "Plaintiffs and the Putative Collective/Class Members"), who worked for Defendant—Burlington Coat Factory Warehouse Corporation ("Burlington")—anywhere in the United States, at any time during the relevant statutes of limitations, through the final disposition of this matter, to recover unpaid overtime compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201–19; and—for those who worked in

California—unpaid compensation, premium pay, penalties, restitution, and attorneys' fees and costs pursuant to the California Labor Code, §§ 201-204, 226, 226.7, 510, 512 and the California Business & Professions Code, §§ 17200-17210 (collectively, the "California Acts"); and—for those who worked in New York—unpaid wages, unpaid overtime, liquidated damages, and attorneys' fees and costs pursuant to the New York Payment of Wages Act, N.Y. LAB. LAW §§ 190–199 ("NYPWA"), the New York Minimum Wage Act, N.Y. LAB. LAW §§ 650–665 ("NYMWA"), and the supporting regulations, N.Y. COMP. CODES R. & REGS. TIT. 12 § 142-2.2 (collectively, the "New York Acts").

**OVERVIEW**

1. This is a collective action to recover unpaid overtime wages and liquidated damages brought pursuant to the FLSA, and class actions pursuant to the California Acts and the New York Acts under Fed. R. Civ. P. 23, to recover unpaid wages, unpaid overtime, premium pay, liquidated damages, penalties, restitution, and other applicable relief.

2. Plaintiffs and the Putative Collective/Class Members are those similarly situated persons who worked for Burlington at any time during the relevant time period(s) through the final disposition of this matter, and who have not been paid for all hours worked nor the correct amount of wages, including overtime, in violation of federal and applicable state law.

3. Although Plaintiffs and the Putative Collective/Class Members have routinely worked (and continue to work) in excess of forty (40) hours per workweek, Plaintiffs and the Putative Collective/Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4. Likewise, Plaintiffs and the Putative Collective/Class Members worked under forty (40) hours per workweek on occasion and were not fully compensated at their regular rate of pay for all hours worked during those workweeks, as required by applicable state laws.

5. During the relevant time period(s), Burlington knowingly and deliberately failed to compensate Plaintiffs and the Putative Collective/Class Members for all hours worked each workweek and the proper amount of overtime on a routine and regular basis.

6. Specifically, Burlington's regular practice—including during weeks when Plaintiffs and the Putative Collective/Class Members worked and recorded hours in excess of forty (40) (not counting hours worked "off-the-clock")—was (and is) to require Plaintiffs and the Putative Collective/Class Members to clock out for a thirty (30) minute unpaid meal period each shift even though they regularly performed compensable work (and continue to perform) work "off the clock" through their respective meal-period breaks.

7. The effect of Burlington's practices were (and are) that all compensable time worked by Plaintiffs and the Putative Collective/Class Members was not (and is not) counted and paid; thus, Burlington has failed to properly compensate Plaintiffs and the Putative Collective/Class Members for all hours worked and has failed to properly compensate them the proper amount of overtime under the FLSA and relevant state law.

8. Plaintiffs and the Putative Collective/Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA or relevant state law.

9. Plaintiffs and the Putative Collective/Class Members seek to recover all unpaid overtime compensation, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid wages, premium pay, penalties, restitution, and other damages owed under the California Acts and the New York Acts as class actions pursuant to Fed. R. Civ. P. 23.

10. Plaintiffs also pray that all similarly situated workers (Putative Collective Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

11. Plaintiffs also pray that the Rule 23 classes are certified as defined herein, with Plaintiff Williams designated as the Class Representative of the

California Class and Plaintiff Marbee designated as the Class Representative of the New York Class.

## THE PARTIES

12. Plaintiff—Brian Terrell ("Terrell")—was employed by Burlington in Texas during the relevant time period(s). Plaintiff Terrell did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

13. Plaintiff—Kenyana Williams ("Williams")—was employed by Burlington in California during the relevant time period(s). Plaintiff Williams did not receive compensation for all hours worked, the correct amount of overtime compensation, or premium pay for non-compliant meal periods.[2]

14. Plaintiff—John Marbee ("Marbee")—was employed by Burlington in New York during the relevant time period(s). Plaintiff Marbee did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[3]

15. The FLSA Collective Members are those current and former hourly retail store employees who were employed by Burlington, anywhere in the United

---

[1] The written consent of Brian Terrell is attached hereto as Exhibit "A."

[2] The written consent of Kenyana Williams is attached hereto as Exhibit "B."

[3] The written consent of John Marbee is attached hereto as Exhibit "C."

States, at any time from August 17, 2023, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiffs worked and were paid.

16. The California Class Members are those current and former hourly retail store employees who were employed by Burlington in California at any time from August 17, 2022, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Williams worked and was paid.

17. The New York Class Members are those current and former hourly retail store employees who were employed by Burlington in New York at any time from August 17, 2020, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Marbee worked and was paid.

18. Defendant Burlington Coat Factory Warehouse Corporation ("Burlington") is a foreign for-profit corporation organized under the laws of the State of Florida with its principal place of business at 1830 Route 130 North, Burlington, New Jersey 08016, and may be served through its registered agent for service of process: CT Corporation System, 820 Bear Tavern Road, West Trenton, New Jersey 08628.

## JURISDICTION & VENUE

19. This Court has federal question jurisdiction over Plaintiffs' claims under the FLSA, 29 U.S.C. §§ 201–19, pursuant to 28 U.S.C. § 1331.

20. This Court has supplemental jurisdiction over the additional California and New York state law claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiffs' FLSA claims that they form part of the same case or controversy.

21. This Court also has original jurisdiction over the additional state law claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d) ("CAFA") because the amount in controversy exceeds $5,000,000.00 in the aggregate and there is minimal diversity of citizenship between the Parties.

22. Plaintiffs have not entered into arbitration agreements that would affect the Court's subject-matter jurisdiction.

23. This Court has general personal jurisdiction over Burlington because it maintains its corporate headquarters in Burlington, New Jersey.

24. Venue is proper pursuant to 28 U.S.C. § 1391 in the District of New Jersey because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred—specifically, Burlington maintains its company headquarters in Burlington, New Jersey, which is located within this District.

## BACKGROUND FACTS

25. Burlington is a national off-price retailer that sells apparel, footwear, accessories, and home goods at more than one thousand (1,000) retail store locations across the United States.[4]

**Plaintiffs and the Putative Collective/Class Members are Similarly Situated**

26. To operate its retail stores, Burlington employed (and continues to employ) numerous non-exempt, hourly retail store employees—including Plaintiffs and the individuals that make up the putative collective and classes.

27. Plaintiffs and the Putative Collective/Class Members were employed by Burlington as non-exempt, hourly retail store employees who were not paid for all hours worked, including hours worked in excess of forty (40) hours each workweek.

28. Plaintiffs and the Putative Collective/Class Members' job duties include assisting customers, operating cash registers, stocking and recovering merchandise, unloading freight, supervising the sales floor, and otherwise carrying out the day-to-day operations of Burlington's retail stores.

29. While exact job titles may differ, these non-exempt, hourly retail store employees were subjected to the same or similar illegal pay practices for similar work.

---

[4] https://www.burlington.com (last visited August 17, 2026).

30. Importantly, none of the FLSA or applicable state law exemptions relieving a covered employer (such as Burlington) of the statutory duty to pay its employees overtime at one and one-half times the regular rate of pay apply to Plaintiffs or the Putative Collective/Class Members.

31. Plaintiff Terrell has been employed by Burlington as a Sales Floor Supervisor since approximately October 2025—first in New Braunfels, Texas and, since approximately March 2026, in Corpus Christi, Texas.

32. Plaintiff Williams was employed by Burlington as a Cashier in Lakewood, California from approximately October 2023 until January 2025.

33. Plaintiff Marbee was employed by Burlington as a Supervisor in Cheektowaga, New York from approximately February 2025 until March 2026.

34. During their respective dates of employment with Burlington, Plaintiffs and the Putative Collective/Class Members typically worked five (5) days a week, in shifts of approximately eight (8) to nine (9) hours per day—for example, from 4:00 p.m. to 1:00 a.m. or from 10:00 a.m. to 6:00 p.m.—these are referred to as "on-the-clock" hours.

35. Plaintiffs and the Putative Collective/Class Members are similarly situated with respect to their job duties, their pay structure, and the policies (and practices) of Burlington resulting in the complained of FLSA and applicable state law violations.

36. Plaintiffs and the Putative Collective/Class Members are similarly situated with respect to their job duties—that is, they all work on the sales floors and in the stockrooms of Burlington's retail stores assisting customers, stocking and recovering merchandise, and carrying out Burlington's retail operations.

37. Plaintiffs and the Putative Collective/Class Members are similarly situated with respect to their pay structure in that they are all paid on an hourly basis and are all subject to Burlington's policy requiring them to clock out for a thirty (30) minute unpaid meal period each shift while remaining on duty.

38. Plaintiffs and the Putative Collective/Class Members are similarly situated with respect to Burlington's policies (and practices) resulting in the complained of FLSA and applicable state law violations.

**Unpaid Meal Breaks**

39. Burlington engaged (and continues to engage) in a policy and practice of requiring Plaintiffs and the Putative Collective/Class Members to clock out for a thirty (30) minute unpaid meal period each shift (the "Unpaid Meal Period Policy").

40. Burlington's timekeeping application—"ESS 45 Zebra"—directs Plaintiffs and the Putative Collective/Class Members when to clock out for their meal periods, and Burlington deducts the thirty (30) minute meal period from their compensable time each shift.

41. During their unpaid meal periods, Plaintiffs and the Putative Collective/Class Members are not completely relieved from duty – specifically, Plaintiffs and the Putative Collective/Class Members are not permitted to leave Burlington's premises for their meal periods, are required to keep their two-way radios ("walkie-talkies") with them, and to respond to calls from Burlington's managers, who regularly contact them over the walkie-talkies with work assignments and questions during their meal periods.

42. As a result, Plaintiffs and the Putative Collective/Class Members cannot use their meal periods freely for their own purposes.

43. Indeed, Burlington's management expressly instructed Plaintiffs and the Putative Collective/Class Members that they remain subject to work demands during their unpaid meal periods.

44. For example, the General Manager of Plaintiff Terrell's store instructed employees at a store meeting that they could take thirty (30) calls on their walkie-talkie while taking her lunch, and that so long as employees are sitting down, they will be clocked out.

45. Plaintiffs and the Putative Collective/Class Members' meal periods are routinely interrupted—typically by two (2) to three (3) walkie-talkie calls per meal period—and, when interrupted, they are most often required to return to the store floor to perform work before their thirty (30) minute meal period has ended.

46. Four (4) out of every five (5) of Plaintiff Marbee's meal periods were interrupted or cut short by requests for assistance from Burlington's customers and employees, which he was required to answer.

47. Plaintiff Williams's meal periods were likewise routinely interrupted, and she regularly performed compensable work during her unpaid meal periods for which Burlington did not pay her.

48. When their meal periods are interrupted, Plaintiffs and the Putative Collective/Class Members are not permitted to clock back in until the full thirty (30) minutes has elapsed—even when they are required to perform work.

49. Burlington's managers expressly told Plaintiff Terrell that he could not clock back in before the thirty (30) minutes elapsed even if he returned to work.

50. Likewise, Plaintiff Marbee's Store Manager informed him that he could not clock back in during an interrupted meal period and instead had to remain clocked out for the full thirty (30) minutes.

51. Because Plaintiffs and the Putative Collective/Class Members are not completely relieved from duty during their meal periods, and because those meal periods predominantly benefit Burlington, the entire thirty (30) minute meal period constitutes compensable work time. *See* 29 C.F.R. § 785.19.

52. Burlington knew Plaintiffs and the Putative Collective/Class Members performed compensable work during their unpaid meal periods because Burlington's

own managers called them over the walkie-talkies and directed them to perform that work during their meal periods.

53. For example, during his final full workweek, Plaintiff Terrell worked five (5) shifts and recorded approximately 40 hours of on-the-clock time, for which Burlington paid him. During at least three (3) of his thirty (30) minute meal periods that week, however, Plaintiff Terrell was interrupted by walkie-talkie calls and returned to the sales floor to perform compensable work—such as assisting customers and responding to his managers' requests—while clocked out, and Burlington kept him clocked out for the full thirty (30) minutes each time.

54. As a result, Burlington failed to pay Plaintiff Terrell approximately one and one-half (1.5) hours of overtime compensation he earned that week at one and one-half times his regular rate of $16.43 per hour (approximately $24.65 per hour), in direct violation of the FLSA.

55. As further example, during her last full workweek, Plaintiff Williams worked five (5) shifts and recorded approximately 40 hours of on-the-clock time, for which Burlington paid her. During at least two (2) of her thirty (30) minute meal periods that week, Plaintiff Williams was interrupted and performed compensable work while clocked out, and Burlington kept her clocked out for the full thirty (30) minutes each time.

56. As a result, Burlington failed to pay Plaintiff Williams approximately one (1) hour of overtime compensation she earned that week at one and one-half times her regular rate of $17.00 per hour ($25.50 per hour), in direct violation of the FLSA, and failed to pay her premium pay for those non-compliant meal periods as required by the California Acts.

57. As further example, during his final full workweek, Plaintiff Marbee worked five (5) shifts and recorded approximately 40 hours of on-the-clock time, for which Burlington paid him. Four (4) of his five (5) thirty (30) minute meal periods that week were interrupted or cut short by requests for assistance, and he returned to work and performed compensable work while clocked out, and Burlington kept him clocked out for the full thirty (30) minutes each time.

58. As a result, Burlington failed to pay Plaintiff Marbee approximately two (2) hours of overtime compensation he earned that week at one and one-half times his regular rate of $20.00 per hour ($30.00 per hour), in direct violation of the FLSA and the New York Acts.

59. As a result of Burlington's failure to compensate Plaintiffs and the Putative Collective/Class Members for compensable work performed "off the clock" during their unpaid meal breaks, Plaintiffs and the Putative Collective/Class Members worked straight time hours and overtime hours for which they were not compensated at the rates required by the FLSA and applicable state laws.

60. Burlington knew or should have known that it was not (and is not) compensating Plaintiffs and the Putative Collective/Class Members for the proper amount of overtime compensation in violation of the FLSA and applicable state laws.

61. Burlington's actions therefore constitute willful violations under the law and were not made in good faith.

62. Burlington knew or should have known that its failure to pay the correct amount of straight time and overtime to Plaintiffs and the Putative Collective/Class Members would cause, did cause, and continues to cause financial injury to Plaintiffs and the Putative Collective/Class Members.

63. Because Burlington did not pay Plaintiffs and the Putative Collective/Class Members time and a half for all hours worked in excess of forty (40) in a workweek, Burlington's pay policies and practices willfully violated (and continue to violate) the FLSA and applicable state laws.

64. Because Burlington did not pay Plaintiffs and the Putative Collective/Class Members for all straight time worked, Burlington's pay policies and practices violated (and continue to violate) applicable state laws.

65. Plaintiffs and the Putative Collective/Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and all unpaid wages, premium

pay, penalties, and restitution owed pursuant to applicable state laws as class actions pursuant to Fed. R. Civ. P. 23.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Collective Action Alleging FLSA Violations)**

**A. FLSA COVERAGE**

66. The preceding paragraphs are incorporated as though fully set forth herein.

67. The "FLSA Collective" is defined as:

> **ALL CURRENT AND FORMER HOURLY RETAIL STORE EMPLOYEES WHO WERE EMPLOYED BY BURLINGTON COAT FACTORY WAREHOUSE CORPORATION, ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM AUGUST 17, 2023, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("FLSA Collective Members").**

68. At all material times, Burlington has been an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

69. At all material times, Burlington has been an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

70. At all material times, Burlington has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in the operation of retail stores and commerce or in the production of goods for

commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

71. Specifically, Burlington employs thousands of hourly retail store employees to operate its retail stores across the United States, purchase merchandise, equipment, and other materials that have been moved in commerce, transport merchandise through commerce and on the interstate highways, and conduct transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail, and the Internet.

72. During the respective periods of Plaintiffs and the FLSA Collective Members' employment by Burlington, these individuals provided services for Burlington that involved interstate commerce for purposes of the FLSA.

73. In performing work for Burlington, Plaintiffs and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

74. Specifically, Plaintiffs and the FLSA Collective Members are (or were) employees who provided retail sales, stocking, and customer service work to Burlington's customers throughout the United States. 29 U.S.C. § 203(j).

75. At all material times, Plaintiffs and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

76. The proposed collective of similarly situated employees—that is, the FLSA Collective sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in paragraph 67.

77. The precise size and identity of the proposed collective should be ascertainable from the business records, tax records, and/or employee and personnel records of Burlington.

**B. FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA**

78. Burlington violated the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing individuals in an enterprise engaged in commerce, the operation of retail stores, or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

79. Moreover, Burlington knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiffs and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

80. Burlington knew or should have known its pay practices were in violation of the FLSA.

81. Burlington is a sophisticated party and employer, and therefore knew (or should have known) its pay policies were in violation of the FLSA.

82. Plaintiffs and the FLSA Collective Members, on the other hand, are (and were) less sophisticated employees who trusted Burlington to pay them according to the law.

83. The decision and practice by Burlington to not pay Plaintiffs and the FLSA Collective Members overtime for all hours worked over forty (40) each week was willful, and was neither reasonable nor in good faith.

84. Accordingly, Plaintiffs and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C. COLLECTIVE ACTION ALLEGATIONS

85. All previous paragraphs are incorporated as though fully set forth herein.

86. Pursuant to 29 U.S.C. § 216(b), Plaintiffs bring this action collectively on behalf of Burlington's employees who are (or were) similarly situated to Plaintiffs with regard to the work they performed and the manner in which they were paid.

87. Other employees have been victimized by Burlington's pay practices and patterns that are in willful violation of the FLSA.

88. The FLSA Collective is defined in paragraph 67.

89. Burlington's failure to pay overtime compensation for the hours that Plaintiffs and the FLSA Collective Members worked over forty (40) hours each workweek resulted from generally applicable policies or practices and does not depend on the personal circumstances of the FLSA Collective Members.

90. Thus, Plaintiffs' experiences are typical of those of the FLSA Collective Members.

91. The specific job titles or precise job requirements of the various FLSA Collective Members do not prevent collective treatment.

92. All FLSA Collective Members, regardless of their precise job requirements or rates of pay, are entitled to overtime compensation for hours worked in excess of forty (40) during a workweek.

93. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

94. Absent a collective action, many members of the proposed FLSA Collective will not likely obtain redress of their injuries and Burlington will retain the proceeds of its violations.

95. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the FLSA Collective and provide for judicial consistency.

96. Accordingly, the FLSA Collective of similarly situated plaintiffs should be certified as defined in paragraph 67 and notice should be promptly sent.

**CALIFORNIA ACTS VIOLATIONS**
**(Class Action Alleging Violations of the California Acts)**

**SECOND CAUSE OF ACTION**
**(Failure to Pay for All Hours Worked, Cal. Lab. Code §§ 204, 1194, 1198)**

**A. CALIFORNIA ACTS COVERAGE**

97. Paragraphs 1-65 are incorporated as though fully set forth herein.

98. The "California Class" is defined as:

> **ALL CURRENT AND FORMER HOURLY RETAIL STORE EMPLOYEES WHO WERE EMPLOYED BY BURLINGTON COAT FACTORY WAREHOUSE CORPORATION, IN THE STATE OF CALIFORNIA, AT ANY TIME FROM AUGUST 17, 2022, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("California Class Members").**

99. At all relevant times, Burlington was subject to the California Labor Code and applicable IWC Wage Orders because Burlington was (and is) an "employer" within the meaning of the Labor Code and applicable IWC Wage Orders.

100. At all relevant times, Burlington employed Plaintiff Williams and the California Class Members as its covered "employees" within the meaning prescribed in the Labor Code.

**B. FAILURE TO PAY FOR ALL HOURS WORKED**

101. Labor Code § 204 provides in relevant part that "all wages . . . earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular payday."

102. Labor Code § 1194(a) provides as follows:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

103. Labor Code § 200(a) defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

104. Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Orders.

105. IWC Wage Order 7-2001(2)(G) defines hours worked as "the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

106. Burlington willfully engaged in and continues to engage in a policy and practice of not compensating Plaintiff Williams and the California Class Members for all hours worked or spent in Burlington's control.

107. Burlington failed to compensate Plaintiff Williams and the California Class Members for all compensable work performed "off the clock" during their unpaid meal periods.

108. Despite having knowledge or the ready ability to gather knowledge of the precise number of hours worked using basic diligence, Burlington regularly fails to compensate Plaintiff Williams and the California Class Members for all hours worked.

109. As such, Burlington committed, and continues to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of Plaintiff Williams and the California Class Members' rights.

110. Accordingly, Plaintiff Williams and the California Class Members are entitled to recover nominal, actual, and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit.

**THIRD CAUSE OF ACTION**
**(Failure to Pay Overtime and Double Time, Cal. Lab. Code §§ 510, 1194)**

111. Paragraphs 1-65 are incorporated as though fully set forth herein.

112. Labor Code § 510(a) provides:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

113. The applicable IWC Wage Order similarly provides that employees shall not be employed more than eight (8) hours in any workday or more than forty (40) hours in any workweek unless they receive one and one-half times their regular rate of pay for all hours worked over eight (8) hours in any workday and over forty (40) hours in the workweek. IWC Wage Order 7-2001(3).

114. Labor Code § 1198 makes it unlawful for employers, like Burlington, to employ employees, including Plaintiff Williams and the California Class Members, under conditions that violate the Wage Order.

115. Despite regularly working over 8 hours a day and 40 hours in a workweek as part of their normal and regular schedules, Burlington did not pay Plaintiff Williams and the California Class Members overtime wages for all overtime hours worked, including those worked "off the clock" during their unpaid meal periods.

116. Accordingly, Burlington owes Plaintiff Williams and the California Class Members the unpaid balance of the full amount of overtime wages owed and interest at the maximum legal rates.

117. Finally, Burlington is also liable to Plaintiff Williams and the California Class Members for their reasonable attorneys' fees and costs incurred in this action.

**FOURTH CAUSE OF ACTION**
**(Failure to Provide Compliant Meal Periods**
**Pursuant to Cal. Lab. Code §§ 226.7, 512)**

118. Paragraphs 1-65 are incorporated as though fully set forth herein.

119. At all relevant times, Plaintiff Williams and the California Class Members were entitled to compliant, bona fide meal periods under the California Labor Code and applicable IWC Wage Orders.

120. Specifically, Sections 226.7 and 512 of the California Labor Code and applicable IWC Wage Order(s) require employers, like Burlington, to provide employees, including Plaintiff Williams and the California Class Members, one uninterrupted 30-minute meal period when they work more than 5 hours per day and a second uninterrupted 30-minute meal period when they work more than 10 hours in a day.

121. Unless employees are relieved of all duties during their 30-minute meal period(s), the employees are considered "on duty," and the meal period must be counted as time worked under the applicable IWC Wage Orders.

122. Pursuant to Section 226.7(b) of the California Labor Code and applicable IWC Wage Orders, employers, like Burlington, who fail to provide an employee with a required meal period must, as compensation, pay the employee one hour of pay at the employee's regular rate for each day that the meal period was not provided.

123. At all relevant times, Burlington routinely failed to make compliant meal periods available to Plaintiff Williams and the California Class Members.

124. Plaintiff Williams and the California Class Members were often unable to take an uninterrupted meal period, were prevented from timely taking a meal period, were otherwise subject to interruption during their meal periods, and were frequently interrupted during their attempted meal periods—including by walkie-talkie calls from Burlington's managers—and were not permitted to leave Burlington's premises during their meal periods.

125. Plaintiff Williams and the California Class Members are not paid one hour of premium pay for their non-compliant meal periods as required by California law.

126. Burlington knowingly, willfully, or in reckless disregard carried out this pattern or practice of failing to provide Plaintiff Williams and the California Class Members compliant meal periods and required premium pay for non-compliant meal periods.

127. Accordingly, Plaintiff Williams and the California Class Members are entitled to compensation for Burlington's failure to provide compliant meal periods, plus interest, attorneys' fees, expenses and costs of suit.

**<u>FIFTH CAUSE OF ACTION</u>**
**(Waiting Time Penalties Pursuant To Cal. Lab. Code §§ 201-203)**

128. Paragraphs 1-65 are incorporated as though fully set forth herein.

129. Labor Code § 201 provides: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

130. Labor Code § 202 provides: "If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

131. Labor Code § 203, in part, provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

132. Plaintiff Williams and some of the California Class Members have left their employment with Burlington, at which time Burlington owed them unpaid wages.

133. These earned, but unpaid, wages derive from the unpaid earned wages, overtime pay, and premium pay Burlington owes Plaintiff Williams and the California Class Members.

134. Unpaid premium pay for non-compliant meal periods constitutes "wages" that must be timely paid upon separation and that support penalties under Labor Code § 203. *See Naranjo v. Spectrum Security Services, Inc.*, 13 Cal. 5th 93 (2022).

135. Burlington's failure to pay was willful and not the result of a good-faith dispute—Burlington's own managers directed Plaintiff Williams and the California Class Members to perform work during their unpaid meal periods and instructed them that they could not clock back in until the full thirty (30) minutes had elapsed.

136. Burlington willfully refused and continues to refuse to pay Plaintiff Williams and the California Class Members all wages due and owing to them, in the form of earned wages, overtime pay, and premium pay, upon the end of their employment as a result of Burlington's illegal policies.

137. Accordingly, Burlington is liable to Plaintiff Williams and the California Class Members for all penalties owing pursuant to Labor Code §§ 201-203.

138. Labor Code § 203 provides that an employee's wages will continue as a penalty up to 30 days from the time the wages were due. Therefore, Plaintiff Williams and the California Class Members are entitled to penalties pursuant to Labor Code § 203, plus interest.

**SIXTH CAUSE OF ACTION**
**(Violations of California's UCL, Cal. Bus. & Prof. Code §§ 17200, et seq.)**

139. Paragraphs 1-65 are incorporated as though fully set forth herein.

140. California Business and Professions Code §§ 17200-210 prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

141. Business and Professions Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

142. Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

143. Beginning at an exact date unknown to Plaintiff Williams, but at least during the 4 years prior to the filing of this Complaint, Burlington committed acts of unfair competition as defined by the UCL, engaging in the unlawful and unfair business acts and practices described in this Complaint, including, but not limited to: (a) violations of Labor Code §§ 204, 1194, and 1198 pertaining to failure to pay all wages owed; (b) violations of Labor Code § 510 and IWC Wage Order 7-2001 pertaining to overtime and double time; and (c) violations of Labor Code §§ 226.7 and 512 and IWC Wage Order 7-2001 pertaining to meal periods.

144. Burlington's violations of these California laws and regulations, as well as the fundamental California public policies protecting wages, serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§ 17200, et seq.

145. Burlington's acts and practices described above constitute unfair and unlawful business practices and unfair competition within the meaning of Business and Professions Code §§ 17200, et seq.

146. Among other things, Burlington's acts and practices have taken from Plaintiff Williams and the California Class Members wages rightfully earned by them, while enabling Burlington to gain an unfair competitive advantage over law-abiding employers and competitors.

147. Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition.

148. Business and Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.

149. Plaintiff Williams and the California Class Members lack an adequate remedy at law with respect to the restitution sought under the UCL because, among other things, the UCL's four-year limitations period reaches wages unlawfully withheld during the fourth year preceding the filing of this Complaint that Plaintiff Williams and the California Class Members' three-year Labor Code claims cannot reach.

150. Plaintiff Williams and the California Class Members are entitled to restitution pursuant to Business and Professions Code § 17203 for all wages and payments unlawfully withheld from them during the 4-year period prior to the filing of this Complaint.

151. Accordingly, Plaintiff Williams and the California Class Members seek and are entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing to them.

152. Plaintiff Williams's success in this action will enforce important rights affecting the public interest and, in that regard, Plaintiff Williams sues on behalf of herself as well as the other similarly situated employees. There is a financial burden involved in pursuing this action, the action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiff Williams by forcing her to pay attorneys' fees from the recovery in this action. Thus, attorneys' fees are appropriately awarded to Plaintiff Williams pursuant to Code of Civil Procedure § 1021.5 and otherwise.

## C. CALIFORNIA CLASS ACTION ALLEGATIONS

153. Plaintiff Williams and the California Class Members bring their California Acts claims as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all similarly situated individuals employed by Burlington to work in California since August 17, 2022.

154. Class action treatment of Plaintiff Williams and the California Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

155. **Numerosity**: The California Class is so numerous that joinder of all members is impracticable. On information and belief, there are hundreds, if not thousands, of current and former hourly retail store employees who were employed

by Burlington in California during the relevant time period and were subjected to the same illegal pay practices.

156. **<u>Commonality</u>**: There are questions of law and fact common to the California Class, including but not limited to: whether Burlington failed to pay Plaintiff Williams and the California Class Members for all hours worked, including compensable work performed during unpaid meal periods, in violation of California law; whether Burlington failed to pay wages for all hours worked, including overtime compensation for hours worked in excess of forty (40) per workweek, in violation of California law; and whether Burlington's conduct was willful and not in good faith.

157. **<u>Typicality</u>**: Plaintiff Williams' claims are typical of the claims of the California Class Members. Plaintiff Williams and the California Class Members worked the same or similar job duties, were subject to the same Unpaid Meal Period Policy, and were denied wages and overtime under the same pay practices.

158. **<u>Adequacy</u>**: Plaintiff Williams will fairly and adequately protect the interests of the California Class. Plaintiff Williams' interests are coextensive with, and not antagonistic to, those of the absent California Class Members. Plaintiff Williams is represented by counsel experienced in litigating wage-and-hour collective and class actions.

159. **Predominance and Superiority**: Common questions of law and fact predominate over any individual questions affecting only individual California Class Members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, among other things, the California Class Members lack the financial resources or incentive to prosecute individual actions, and a class action will conserve judicial resources and ensure consistent adjudication.

160. Accordingly, the California Class should be certified as defined in paragraph 98.

**NEW YORK ACTS VIOLATIONS**
**(Class Action Alleging Violations of the New York Acts)**

**SEVENTH CAUSE OF ACTION**
**(Class Action Alleging Violations of the New York Acts)**

## A. NEW YORK ACTS COVERAGE

161. Paragraphs 1-65 are incorporated as though fully set forth herein.

162. The "New York Class" is defined as:

> **ALL CURRENT AND FORMER HOURLY RETAIL STORE EMPLOYEES WHO WERE EMPLOYED BY BURLINGTON COAT FACTORY WAREHOUSE CORPORATION, IN THE STATE OF NEW YORK, AT ANY TIME FROM AUGUST 17, 2020, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("New York Class Members").**

163. At all material times, Burlington has been an "employer" as defined by the New York Acts. *See* N.Y. LAB. LAW §§ 190(3) and 651(6).

164. At all material times, Plaintiff Marbee and the New York Class Members were Burlington's "employees" as defined within the New York Acts. *See* N.Y. LAB. LAW §§ 190(2) and 651(5).

165. Burlington—the "employer"—is not exempt from paying wages and overtime benefits under the New York Acts.

**B. FAILURE TO PAY WAGES IN ACCORDANCE WITH THE NEW YORK ACTS**

166. The New York Acts require employers, like Burlington, to pay employees, including Plaintiff Marbee and the New York Class Members, overtime wages at a rate not less than 1.5 times their regular rates of pay for all hours worked in excess of forty (40) in a workweek. *See* N.Y. COMP. CODES R. & REGS. TIT. 12, § 142-2.2; N.Y. LAB. LAW § 663.

167. The New York Acts also require employers, like Burlington, to pay employees, including Plaintiff Marbee and the New York Class Members, their agreed wages for all hours worked on their regular paydays. *See* N.Y. LAB. LAW § 191.

168. Burlington violated, and continues to violate, the New York Acts by failing to pay Plaintiff Marbee and the New York Class Members for all hours worked—including compensable work performed during their unpaid meal periods—and by failing to pay overtime wages at rates not less than 1.5 times their regular rates for all hours worked after forty (40) in a workweek.

169. In violating the New York Acts, Burlington acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law.

170. As a direct and proximate result of Burlington's willful conduct, Plaintiff Marbee and the New York Class Members have suffered substantial losses, and continue to suffer substantial losses, and have been deprived of compensation to which they are entitled, including their unpaid wages and overtime, liquidated damages equal to one hundred percent of the total amount of wages found to be due, and reasonable attorneys' fees pursuant to the New York Acts. *See* N.Y. LAB. LAW §§ 198(1-a), 663(1).

### C. NEW YORK CLASS ACTION ALLEGATIONS

171. Plaintiff Marbee brings this Count under the New York Acts as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the New York Class Members defined in paragraph 162.

172. **Numerosity**: The New York Class is so numerous that joinder of all members is impracticable. On information and belief, there are hundreds, if not thousands, of current and former hourly retail store employees who were employed by Burlington in New York during the relevant time period and were subjected to the same illegal pay practices.

173. **Commonality**: There are questions of law and fact common to the New York Class, including but not limited to: whether Burlington failed to pay Plaintiff

Marbee and the New York Class Members for all hours worked, including compensable work performed during unpaid meal periods, in violation of the New York Acts; whether Burlington failed to pay overtime compensation for hours worked in excess of forty (40) per workweek, in violation of the New York Acts; and whether Burlington's conduct was willful and not in good faith.

174. **Typicality**: Plaintiff Marbee's claims are typical of the claims of the New York Class Members. Plaintiff Marbee and the New York Class Members worked the same or similar job duties, were subject to the same Unpaid Meal Period Policy, and were denied wages and overtime under the same pay practices.

175. **Adequacy**: Plaintiff Marbee will fairly and adequately protect the interests of the New York Class. Plaintiff Marbee's interests are coextensive with, and not antagonistic to, those of the absent New York Class Members. Plaintiff Marbee is represented by counsel experienced in litigating wage-and-hour collective and class actions.

176. **Predominance and Superiority**: Common questions of law and fact predominate over any individual questions affecting only individual New York Class Members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, among other things, the New York Class Members lack the financial resources or incentive to prosecute individual

actions, and a class action will conserve judicial resources and ensure consistent adjudication.

177. Accordingly, the New York Class should be certified as defined in paragraph 162.

## RELIEF SOUGHT

Plaintiffs respectfully pray for judgment against Burlington as follows:

a. For an Order certifying the FLSA Collective as defined in ¶ 67;

b. For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c. For an Order pursuant to § 16(b) of the FLSA finding Burlington liable for unpaid wages, including unpaid overtime wages, due to Plaintiffs (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those FLSA Collective Members who have joined in the suit);

d. For an Order certifying the California Class as defined in ¶ 98, and designating Plaintiff Williams as Representative of the California Class;

e. For an Order pursuant to the California Acts awarding Plaintiff Williams and the California Class Members damages for unpaid wages, premium pay, penalties, restitution, and all other damages allowed by law;

f. For a Declaratory Judgment that Burlington violated the UCL as a result of the aforementioned violations of the California Labor Code and applicable IWC Wage Orders;

g. For an Order certifying the New York Class as defined in ¶ 162, and designating Plaintiff Marbee as Representative of the New York Class;

h. For an Order pursuant to the New York Acts awarding Plaintiff Marbee and the New York Class Members damages for unpaid wages and all other damages allowed by law;

i. For an Order awarding the costs of this action;

j. For an Order awarding attorneys' fees;

k. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

l. For an Order awarding Plaintiffs service awards as permitted by law;

m. For an Order compelling the accounting of the books and records of Burlington, at Burlington's expense (should discovery prove inadequate); and

n. For an Order granting such other and further relief as may be necessary and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and the Putative Collective/Class Members, hereby demand a trial by jury on all issues of fact and damages.

Date: August 17, 2026

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: */s/ Innessa M. Huot*
Innessa M. Huot
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
Email: ihuot@faruqilaw.com

**ANDERSON ALEXANDER, PLLC**

By: */s/ Clif Alexander*
Clif Alexander (*Pro Hac Vice* Anticipated)

Austin W. Anderson
(*Pro Hac Vice* Anticipated)
Lauren E. Braddy
(*Pro Hac Vice* Anticipated)
Carter T. Hastings
(*Pro Hac Vice* Anticipated)
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284
Email: clif@a2xlaw.com
austin@a2xlaw.com
lauren@a2xlaw.com
carter@a2xlaw.com

***Counsel for Plaintiffs and the Putative Collective/Class Members***